ELIZABETH BERTOLINO SBN 331674
BERTOLINO LAW, PC
20 Haight Street
San Francisco, CA 94102
TELEPHONE: (415) 542-6409
elizabeth@bertolinolawfirm.com

ANTHONY L. LABEL, NO. 205920
MOLLY RYAN, NO. 339390
THE VEEN FIRM, LLP
20 Haight Street
San Francisco, California 94102
Telephone: (415) 673-4800
Facsimile: (415) 771-5845
AL.Team@VeenFirm.com

MICHAEL CHRISTIAN SBN 212716
THE LAW OFFICE OF MICHAEL CHRISTIAN
4827 E. Bradford Ave.
Orange CA 92867
Telephone: (415) 794-2045
mchristianlaw@outlook.com

ATTORNEYS FOR PLAINTIFFS
AND PROPOSED CLASS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARILYN SAHAGUN LOPEZ; GIOVANNA RAMIREZ-HERNANDEZ; LASONYA WELLS; SALLY BATES; VICTORIA CHEW; JAZMIN MENDEZ; LISA GONZALES; ADRIANA GONZALEZ OCHOA; ALEXCIS HERRERA; LACARLA CARR; SILVIA MONTOYA; DAMENA PAGE; COURTNEY BOSSE; CANTRAIL MURPHY; DEPHINA SYKES; TAYLOR ROSS; JAYLA GLASER; MARY O'NEAL; MELISSA PERNA; SARAH WALLS, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO SHERIFF'S OFFICE; PAUL | Case No.: _____<br><br>**CLASS ACTION**<br>**CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL**<br><br>Claims:<br>1.  42 U.S.C. § 1983 - Fourth Amendment (Unreasonable Search)<br>2.  42 U.S.C. § 1983 - Fourteenth Amendment (Substantive Due Process)<br>3.  42 U.S.C. § 1983 - Equal Protection (Sex Discrimination)<br>4.  42 U.S.C. § 1983 - Eighth Amendment (Cruel and Unusual Punishment, alternative) |

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-1-

| | |
|---|---|
| MIYAMOTO, in his individual and official capacity as Sheriff; KATHERINE JOHNSON, in her individual and official capacity as Undersheriff; SERGEANT IBARRA (first name unknown); DEPUTY DOCKERY (first name unknown); DEPUTY NG (first name unknown); DEPUTY MUSTOS (first name unknown); and DOES 101-500, inclusive,<br><br>Defendants, | 5. 42 U.S.C. § 1983 - First Amendment (Retaliation)<br>6. 42 U.S.C. § 1983 - Monell and Supervisory Liability<br>7. Cal. Const., art. I, § 1 (Right to Privacy)<br>8. Cal. Const., art. I, § 13 (Unreasonable Search and Seizure)<br>9. California Civil Code § 52.1 (Bane Act)<br>10. California Civil Code § 52.4 (Gender Violence)<br>11. Battery<br>12. Intentional Infliction of Emotional Distress<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This is a federal and state civil rights class action brought by women detained at San Francisco County Jail Number 2 ("SFCJ No. 2"). The twenty named Plaintiffs are among an unknown but potentially substantial number of women subjected to these practices: women who were strip-searched before May 22, 2025, women who were strip-searched during the mass operation on May 22, 2025, and women who were subjected to suspicionless post-movement strip searches in the months that followed. The practices challenged here were not limited to a single day or a single cohort of women. They were imposed on every woman who passed through SFCJ No. 2's women's housing unit and was subjected to the search protocols that SFSO maintained before, during, and after May 22. Plaintiffs challenge a pattern and practice of deliberately degrading, suspicionless, cross-gender strip and visual body cavity searches; the unauthorized activation of body-worn cameras ("BWC") during those searches for no legitimate security purpose; the systematic denial of menstrual hygiene following forced disrobing; the coercive weaponization of strip searches as punishment and retaliation; and the deliberate positioning of male deputies to observe women's naked bodies during searches. The violations are not accidental. They are systemic, institutionally sanctioned, and directed at a captive population of women who cannot escape or refuse.

2. On May 22, 2025, San Francisco Sheriff's Office ("SFSO") supervisors and deputies descended on B Pod at SFCJ No. 2 in coordinated formation. Approximately twelve deputies, including male deputies, corralled all women in the pod into the common area under armed guard,

-2-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

holding them there as a controlled group while individual women were selected and compelled to strip naked, expose their genitalia, lift their breasts, spread their buttocks, squat, and cough. The male deputies present were not there by accident, were not unaware of what was occurring, and did not look away. They were stationed throughout the pod, including in positions with direct sightlines into the search area, to serve as human barriers and observers. This was not incidental, inadvertent, or casual: it was deliberate.

3.　The deliberateness of the cross-gender exposure is beyond dispute. Multiple plaintiffs heard Sergeant Ibarra, the supervising officer, explicitly instruct Deputy Dockery not to deactivate her body-worn camera during the searches. When Dockery asked whether she should turn her camera off, Ibarra said no. Ibarra later told detainees the footage might be "used for training purposes." He told women the footage was similar to what they "see on YouTube" and was "just like cops." He told women that their genitalia would be "blurred" before the footage was released publicly- indicating not only that footage existed, but that Ibarra contemplated public distribution of images of naked women. These statements confirm that supervisors knew recording was occurring during intimate searches and deliberately chose to allow it. These facts categorically distinguish this case from cases in which courts have found male viewing to be accidental or incidental.

4.　The violations extended beyond May 22, 2025. In the weeks and months that followed, women continued to be subjected to strip searches following court appearances, medical appointments, and family visitation, without individualized suspicion, even when they had been continuously supervised and physically restrained throughout their movement. A subsequent search in June 2025 was described by one plaintiff as an "orifice search" far exceeding any legitimate security protocol. In July 2025, deputies used flashlights to illuminate the interior of women's vaginas. A deputy involved in the May 22 operation later approached a plaintiff and groped her breast while making degrading sexual comments. Deputy Ng routinely stared at women in the showers.

5.　Women who complained or organized others to file grievances were retaliated against. After plaintiffs LaSonya Wells and Alexcis Herrera organized other women to file tort claims, both were placed in segregation within a week. Sergeant Ibarra directly threatened continued strip searches in

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

November 2025 unless women ceased what he called "disrespecting deputies." These reprisals were predictable, coordinated, and intended to silence women who exercised their right to seek redress.

6. Defendants carried out these practices pursuant to official policy, longstanding custom, and supervisory ratification. Sheriff Paul Miyamoto, as the final policymaker for SFSO, is responsible for all policies, practices, customs, and failures of training at SFCJ No. 2. Plaintiffs seek compensatory and punitive damages, declaratory relief, injunctive relief mandating constitutional compliance, and attorneys' fees and costs.

## **JURISDICTION AND VENUE**

7. This Court has original jurisdiction under 28 U.S.C. sections 1331 and 1343(a)(3)-(4) because this action arises under 42 U.S.C. sections 1983 and 1988 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. section 1367(a) because those claims form part of the same case or controversy as the federal claims.

9. Venue is proper in this District under 28 U.S.C. section 1391(b)(1)-(2). All Defendants reside or maintain principal offices in the City and County of San Francisco. All acts and omissions giving rise to this action occurred at SFCJ No. 2, located at 425 7th Street, San Francisco, California 94103, within this District.

## **PARTIES**

A. Plaintiffs

10. Plaintiff MARILYN SAHAGUN LOPEZ was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. On May 22, 2025, she was subjected to the mass strip search described herein. Deputy Mustos conducted her search. Male deputies were deliberately stationed in positions where they could see into the search area and directly observe her naked body. After she filed a grievance regarding the strip search, she was removed from her job assignment in retaliation. She was also required to comply with orders not to use bathroom facilities during the search, causing her to develop a urinary tract infection. Mustos subsequently made repeated, unsolicited sexual comments about her anatomy and groped her breast.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

11. Plaintiff GIOVANNA RAMIREZ-HERNANDEZ was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was searched by Deputy Dockery with Dockery's BWC activated. She heard Sergeant Ibarra tell Dockery not to deactivate her camera. Following the May 22 search, deputies changed her pat-down procedures from female deputies to male deputies in retaliation. She made a complaint about a fellow detainee who sexually harassed her; the supervising deputy disclosed her complaint to the harasser. Deputy Ng routinely stared at her and other women while they were showering.

12. Plaintiff LASONYA WELLS was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was searched by Deputy Dockery with Dockery's BWC activated. She was menstruating at the time and was forced to remove her tampon; deputies did not provide a replacement. She and plaintiff Alexcis Herrera organized other women to file government tort claims. Within approximately one week, both she and Herrera were placed in administrative segregation in direct retaliation. She independently heard Sergeant Ibarra instruct Dockery not to deactivate her camera.

13. Plaintiff SALLY BATES was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search by Deputy Dockery with Dockery's BWC activated. She witnessed the retaliatory placement of plaintiffs Marilyn Sahagun Lopez and Victoria Chew in segregation following their grievances. She also observed plaintiffs LaSonya Wells and Alexcis Herrera placed in segregation following their organization of tort claim filings.

14. Plaintiff VICTORIA CHEW was a pretrial detainee at SFCJ No. 2 on May 22, 2025. She was subjected to the mass strip search by a deputy described as a "rookie" whose BWC was activated. Sgt. Ibarra told women after the search that the footage was going to be "used for training purposes" and that genitals would be "blurred out." Some deputies joked that the footage was or would be posted to YouTube. Shortly after filing a grievance, plaintiff Chew was placed in segregation without justification.

15. Plaintiff JAZMIN MENDEZ was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search and believes she was recorded. She had previously been transferred to C Pod when she asked for water, and was strip searched upon that transfer. She was menstruating and asked for sanitary pads; deputies told her they had none. She

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-5-

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

witnessed a detainee who had spoken about filing a lawsuit transferred to segregation. She continues to experience nightmares related to the strip search and is currently on medication for trauma-related symptoms.

16. Plaintiff LISA GONZALES was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search and believes Deputy Paulos recorded her. She was subjected to a substantially more invasive search on June 17, 2025, which she described as an "orifice search" involving penetrating examination far exceeding any recognized security protocol. She was also subjected to repeated strip searches before the pandemic for possessing gel pens or having tablets activated. Sgt. Ibarra told her and other women in November 2025 that strip searches would continue "if they kept disrespecting deputies." After a press conference regarding the searches became public, deputies placed Narcan signs at the tops of shower stalls to obstruct the view of women showering.

17. Plaintiff ADRIANA GONZALEZ OCHOA was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search and observed her deputy's BWC indicator light "blinking red." Following the searches, she observed that Giovanna Ramirez-Hernandez was "frantic" about being recorded. Plaintiff Ochoa was subjected to approximately four additional strip searches following May 22. She believes those searches were selective-limited to women who had filed grievances about May 22-and constituted deliberate retaliation.

18. Plaintiff ALEXCIS HERRERA was a pretrial detainee at SFCJ No. 2 on and around May 22, 2025. She was present in the pod during the May 22 search and witnessed the searches of others. She heard Deputy Dockery ask Sergeant Ibarra whether to deactivate her BWC and heard Ibarra say no. During a walkthrough the following day, she told Ibarra that some women had been recorded; Ibarra responded that the footage would be like "YouTube" or "cops." She and plaintiff LaSonya Wells organized other women to file government tort claims. Within approximately one week, deputies placed both Wells and Herrera in administrative segregation.

19. Plaintiff LACARLA CARR was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search and could observe other deputies present. She heard Sergeant Ibarra tell Dockery not to deactivate her camera and heard the statement that footage

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-6-

"would be erased later." She was menstruating during the May 22 search and was required to remove her sanitary pad. She was subjected to an additional search in June 2025, and in July 2025 was subjected to a search during which a deputy used a flashlight to illuminate the interior of her vagina. She observed that whenever strip searches occurred, a deputy entered the pod carrying a long firearm.

20. Plaintiff SILVIA MONTOYA was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search by Deputy Dockery with Dockery's BWC activated. She had been subjected to strip searches approximately every two months before May 22. On October 15, 2025, she was subjected to a pat-down search in a hallway by four male deputies following a visit with her grandchildren. In early December 2025, deputies confiscated her rings and the rings of other named plaintiffs without justification. In June 2025, she, Marilyn Sahagun Lopez, and Giovanna Ramirez-Hernandez were removed from their kitchen work assignments in retaliation.

21. Plaintiff DAMENA PAGE was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search with BWCs recording. She asked whether she was being recorded and was told the recording "was not going to be used for people to view it." She asked deputies to deactivate their cameras; they refused. After she filed her own government tort claim, she was placed in administrative segregation.

22. Plaintiff COURTNEY BOSSE was a pretrial detainee at SFCJ No. 2 on May 22, 2025. She was subjected to the May 22, 2025 strip search. The deputy who conducted her search did not have her own BWC activated, but other deputies present had their BWCs activated and pointed toward the search area. She overheard Sergeant Ibarra state that the footage would be erased later. Following the public press conference disclosing the searches, plaintiff Bosse and other women who had been working in the kitchen were removed from those work assignments.

23. Plaintiff CANTRAIL MURPHY was a pretrial detainee at SFCJ No. 2 on May 22, 2025. She was subjected to the May 22, 2025 strip search and was subsequently subjected to additional strip searches.

24. Plaintiff DEPHINA SYKES was a pretrial detainee at SFCJ No. 2 on May 22, 2025. She

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-7-
CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND
DEMAND FOR JURY TRIAL

was subjected to the May 22, 2025 strip search by a deputy whose BWC appeared to be activated, with the indicator light visible. She observed indicator lights on the BWCs of other deputies walking through the pod. She was afraid to file complaints due to prior adverse experiences in the correctional system.

25. Plaintiff TAYLOR ROSS was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search and had been subjected to multiple strip searches before and after May 22. In early September 2025, she gave birth. During her hospitalization for delivery, male SFSO deputies repeatedly entered her hospital room while she was receiving pelvic examinations and while she was breastfeeding her newborn son. Medical personnel explicitly asked the deputies to leave; the deputies refused, stating they were required to maintain a line of sight per SFSO policy. This policy caused plaintiff Ross to be involuntarily observed by male deputies during pelvic exams and breastfeeding.

26. Plaintiff JAYLA GLASER was a pretrial detainee at SFCJ No. 2 on May 22, 2025. She was subjected to the May 22, 2025 strip search and observed deputies on the upper tier with sightlines to the search area. She was menstruating at the time and was not provided a replacement sanitary pad after being required to remove her pad. Deputies told her she would receive clean underwear following the search; she did not, and subsequently bled through the underwear she was wearing.

27. Plaintiff MARY O'NEAL was a pretrial detainee at SFCJ No. 2 on and around May 22, 2025. She was subjected to the May 22, 2025 strip search and to a prior strip search before a hospital psychiatric transport. She observed that plaintiff LaSonya Wells was subjected to a strip search following a visit by O'Neal.

28. Plaintiff MELISSA PERNA was a pretrial detainee at SFCJ No. 2 on and after May 22, 2025. She was subjected to the May 22, 2025 strip search and was searched while another inmate was searched in the bathroom at the same time. At one point during the strip search while she was completely naked, a deputy walked an inmate directly in front of her to search the other inmate in the adjacent stall. She was subjected to subsequent strip searches after filing a government claim against the City and noted that the women who also filed government claims were routinely subjected to strip searches after making their complaints as well.

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-8-

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

29. Plaintiff SARAH WALLS was a pretrial detainee at SFCJ No. 2. She was subjected to a strip search upon return from federal court in August 2025, with a BWC activated and without privacy, in conditions observable to others. She brings this action as a member of the proposed BWC Recording Subclass and Post-Movement Strip Search Subclass.

B. Defendants

30. Defendant CITY AND COUNTY OF SAN FRANCISCO ("CCSF") is a public entity organized and existing under California law. CCSF operates SFCJ No. 2 through the San Francisco Sheriff's Office and is responsible for all policies, customs, practices, training, supervision, and discipline of personnel who operate the jails.

31. Defendant SAN FRANCISCO SHERIFF'S OFFICE ("SFSO") is the law enforcement and custodial agency directly responsible for the operation of SFCJ No. 2, including strip search procedures, body-worn camera protocols, menstrual hygiene distribution policies, and disciplinary processes.

32. Defendant PAUL MIYAMOTO is and was at all relevant times the duly elected Sheriff of the City and County of San Francisco and a final policymaker for the SFSO. He is sued in his individual and official capacities.

33. Defendant KATHERINE JOHNSON is and was at all relevant times the Undersheriff of the San Francisco Sheriff's Office, a position she has held since September 2022. Johnson has served with the SFSO since March 1996, working directly in County Jail Number 2 and County Jail Number 4, and has held key executive positions including Chief Deputy, Chief of Staff, and Assistant Sheriff across multiple Sheriff administrations. As Undersheriff, Johnson is the second-highest ranking official in the SFSO and bears direct operational responsibility for the custody operations of SFCJ No. 2, including the formulation, implementation, supervision, and enforcement of strip search procedures, body-worn camera policies, detainee movement protocols, and hygiene distribution practices. Plaintiffs are informed and believe and thereon allege, based on information from a source with direct knowledge of SFSO operations, that Undersheriff Johnson designed, directed, implemented, or ratified the strip search policies and practices challenged herein, and that the May 22, 2025 mass strip search operation and the post-movement search practices described in

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

this Complaint were carried out pursuant to policies and customs that Johnson originated, authorized, or approved. As a functional final policymaker for SFSO custody operations, Johnson's decisions and ratifications are attributable to the City and County of San Francisco under Monell. She is sued in her individual and official capacities.

34. Defendant SERGEANT IBARRA (first name unknown) was at all relevant times a supervisory sergeant at SFCJ No. 2. He personally directed deputies during the May 22, 2025 operation, explicitly instructed Deputy Dockery not to deactivate her BWC during strip searches, made statements to detainees minimizing and threatening the consequences of their having been recorded, and threatened continued searches against women who complained. He is sued in his individual and official capacities.

35. Defendant DEPUTY DOCKERY (first name unknown) conducted strip and visual body cavity searches of multiple plaintiffs during the May 22, 2025 operation with her body-worn camera activated, pursuant to Sergeant Ibarra's explicit instruction. She is sued in her individual capacity.

36. Defendant DEPUTY NG (first name unknown) routinely entered women's shower areas and stared at women while they were bathing. He is sued in his individual capacity.

37. Defendant DEPUTY MUSTOS (first name unknown) conducted strip searches of female plaintiffs and subsequently made degrading sexual comments to plaintiff Marilyn Sahagun Lopez about her anatomy and groped her breast. He is sued in his individual capacity.

38. Plaintiffs are ignorant of the true names and capacities of defendants sued as DOES 101 through 500, inclusive, and will amend this Complaint to allege their true names when ascertained. At all relevant times, each individual defendant acted under color of state law, within the course and scope of employment or official duty.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

39. Plaintiffs who are or were pretrial detainees at SFCJ No. 2 have presented timely and proper government tort claims to CCSF pursuant to California Government Code section 910 et seq. All applicable claims periods have been satisfied or are tolled by Defendants' ongoing retaliatory and coercive conduct, the discovery rule, equitable tolling, or other applicable doctrine.

40. Plaintiffs' federal civil rights claims under 42 U.S.C. section 1983 are not subject to the

-10-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. section 1997e(a), insofar as Plaintiffs were and are pretrial detainees rather than convicted prisoners within the meaning of that statute.

## FACTUAL ALLEGATIONS

A. Background: The Women's Housing Unit at SFCJ No. 2

41. SFCJ No. 2, located at 425 7th Street, San Francisco, California, is operated by the SFSO and houses both pretrial detainees and convicted persons. It is the only San Francisco County Jail that houses women. B Pod is the women's housing unit that was the site of the May 22, 2025 mass strip search.

42. Women detained at SFCJ No. 2 are held in a facility where their physical movements, bodily functions, and access to privacy are entirely subject to the discretion of SFSO personnel. They cannot refuse strip searches without facing disciplinary consequences. They cannot protect themselves from observation by male deputies. They cannot obtain menstrual hygiene products without requesting them from the same deputies who search them. They cannot leave. Their vulnerability to abuse of authority is structural and absolute.

B. The May 22, 2025 Mass Strip Search: Intentional Cross-Gender Observation and Deliberate Recording

43. On May 22, 2025, at approximately 7:30 a.m., Sergeant Ibarra led approximately twelve SFSO deputies, including male deputies, into B Pod at SFCJ No. 2 in coordinated formation. The deputies positioned themselves throughout the pod and ordered all women in the unit to leave their cells and assemble in the common area.

44. Under armed supervision, the women were held in the common area while individual women were selected one by one and directed to enter a search area. No individualized reasonable suspicion supported the selection of any woman for search. No specific threat or security event justified the operation. The searches were mass, suspicionless, and random.

45. Women were ordered to remove all clothing, including bras and underwear. They were then commanded to lift their breasts, spread their buttocks, squat, and cough, exposing all intimate body parts for visual inspection.

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-11-

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

46. The presence of male deputies during the searches was not accidental, inadvertent, or the result of unanticipated circumstance. Male deputies were strategically positioned throughout B Pod as partitions - deliberately placed so that they had direct sightlines into the area where women were being searched. Plaintiff Marilyn Sahagun Lopez states that the male deputies were the partitions, positioned specifically so that they could see into the search area. Deputies were stationed on the staircase, the upper tier, and in positions throughout the pod with direct visual access to women undergoing intimate searches. They did not look away.

47. The body-worn cameras worn by Sergeant Ibarra, Deputy Dockery, and other deputies present in B Pod were activated and recording during the searches. Multiple plaintiffs observed that cameras were on and pointed toward the search area. Plaintiff Giovanna Ramirez-Hernandez observed that Dockery's camera was activated throughout the search. Plaintiff Sally Bates confirmed she was searched by Dockery with the camera on. Plaintiff Adriana Gonzalez Ochoa observed that the recording indicator light on her searching deputy's camera was "blinking red." Plaintiff Damena Page asked deputies to deactivate their cameras; they refused.

48. The activation of body-worn cameras during strip searches was deliberate and supervisory. Plaintiffs Giovanna Ramirez-Hernandez, LaSonya Wells, Alexcis Herrera, LaCarla Carr, and Courtney Bosse each independently state that Deputy Dockery asked Sergeant Ibarra during the operation whether she should deactivate her body-worn camera, and that Ibarra explicitly said no. This refusal is direct evidence of supervisory intent to capture women's naked bodies on digital recording equipment while they were under compelled nudity.

49. Sergeant Ibarra made additional statements confirming his awareness and approval of the recording. He told women the footage would be "used for training purposes." He told women the footage was "just like YouTube" and "just like cops." He told women that their genitalia would be "blurred" before footage was publicly released - not as a reassurance, but as confirmation that footage existed and that he was contemplating its public distribution. Plaintiff Victoria Chew reports that deputies joked the footage was already or would be posted to YouTube. These statements, made to women who had just been compelled to stand naked under guard, constitute explicit threats.

50. Women who were menstruating were not exempted from the searches and received no basic

-12-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

medical dignity. Plaintiff LaSonya Wells was forced to remove her tampon without replacement. Plaintiff LaCarla Carr was required to remove her sanitary pad; no replacement was confirmed. Plaintiff Jayla Glaser was not provided a replacement pad and subsequently bled through her underwear while waiting for supplies. Plaintiff Jazmin Mendez requested pads; deputies said they had none.

51. Following the searches, women were not provided clean replacement undergarments. The failure to restore basic sanitary conditions after forcing women to strip naked compounded the humiliation and created objectively unsanitary conditions.

C. The Pattern Continues: Additional Unlawful Searches After May 22, 2025

52. The May 22, 2025 operation was not isolated. It was the most visible and thoroughly documented manifestation of a broader institutional practice of suspicionless and retaliatory strip searches imposed on women at SFCJ No. 2 before and after May 22, 2025. It reflects an entrenched pattern and practice of suspicionless, degrading, and invasive searches that predates and continues after May 22. The searches before May 22, the mass operation on May 22, and the escalating invasive searches in the months that followed are not discrete events: they are evidence of a single, centralized, supervisory-authorized institutional practice, repeated across time, personnel, and occasions, and therefore susceptible to common proof.

53. On June 17, 2025, plaintiff Lisa Gonzales was subjected to an "orifice search" - a penetrating internal examination significantly more invasive than a visual body cavity search and far beyond any protocol justifiable without a warrant or probable cause.

54. In July 2025, plaintiff LaCarla Carr was subjected to a search during which a deputy used a flashlight to illuminate the interior of her vagina. This constitutes a physical, penetrating examination conducted without a warrant, without probable cause, and without any individualized basis.

55. Plaintiff Sarah Walls was subjected to a strip search upon return from federal court in August 2025, with a BWC activated and in conditions observable to others who were not participants in the search.

56. Plaintiff Taylor Ross was pregnant at SFCJ No. 2 and gave birth in early September 2025.

-13-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

During her hospitalization, male SFSO deputies entered her hospital room on multiple occasions while she was receiving pelvic examinations and while she was breastfeeding her newborn son. Medical professionals asked the deputies to leave; they refused and cited SFSO policy. This policy subjected plaintiff Ross to compelled observation by male deputies during pelvic exams and breastfeeding – some of the most medically intimate experiences of her life.

57. Women returning from visits with family members were subjected to strip searches regardless of whether they had been under continuous SFSO supervision throughout their visits. Plaintiff Silvia Montoya was subjected to a pat-down search in a hallway by four male deputies following a visit with her grandchildren on October 15, 2025. Women were also strip searched following supervised medical appointments, even when they had been restrained and directly supervised throughout their movement.

D. Sexual Harassment and Physical Misconduct by Deputies

58. Deputy Mustos, who searched plaintiff Marilyn Sahagun Lopez during the May 22, 2025 operation, subsequently made repeated unsolicited references to her sexual anatomy, asked her about her sex toys, groped her breast, and made degrading remarks about the appearance of her body. This conduct occurred following her participation in her strip search and reflected her awareness of her naked body from that search.

59. Deputy Ng routinely entered areas of SFCJ No. 2 where women were showering and stared at them while they bathed. Plaintiff Giovanna Ramirez-Hernandez specifically described Ng staring at women in the showers. This conduct reflects SFSO's failure to implement or enforce any meaningful prohibition on male deputies observing women's naked bodies.

E. Systematic Retaliation Against Women Who Complained

60. Following the May 22, 2025 operation, multiple plaintiffs filed grievances, submitted government tort claims, or participated in organizing other women to exercise their rights. Defendants responded with a coordinated and systematic pattern of retaliation:

61. Plaintiffs LaSonya Wells and Alexcis Herrera organized women in B Pod to file government tort claims, explained the process, and assisted others. Within approximately one week of this advocacy, deputies placed both Wells and Herrera in administrative segregation without

-14-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

documented justification.

62. Plaintiff Marilyn Sahagun Lopez complained about the strip search and was removed from her work assignment in retaliation.

63. Plaintiff Victoria Chew filed a grievance and was placed in segregation shortly thereafter, without paperwork or explanation.

64. Plaintiff Damena Page filed her own government tort claim and was placed in segregation thereafter. She states that "ones who spoke up are being targeted."

65. Plaintiff Jazmin Mendez personally witnessed another detainee transferred to segregation after she spoke openly about filing a lawsuit. Mendez reports that if women "spoke up" they were placed in cells with only a small bathroom and left there for five to six hours.

66. Plaintiffs Adriana Gonzalez Ochoa and Melissa Perna were subjected to approximately four additional strip searches following May 22. They believe the searches were focused on women who had filed grievances-constituting targeted retaliation.

67. Sergeant Ibarra told plaintiff Lisa Gonzales and other women in November 2025 that strip searches would continue "if they kept disrespecting deputies and not listening to what they told them to do." This statement conditioned the cessation of future searches on detainees' silence and compliance, constituting both coercion and a direct chilling of First Amendment-protected activity.

68. Following a press conference at which the searches were publicly disclosed, plaintiffs Courtney Bosse, Silvia Montoya, Marilyn Sahagun Lopez, and Giovanna Ramirez-Hernandez were all removed from their kitchen work assignments. Deputies also posted Narcan signs at the tops of women's shower stalls following the press conference, an apparent attempt to obstruct visibility into areas where women's naked bodies could be observed-confirming SFSO's awareness that unauthorized observation had been occurring.

F. Supervisory Awareness and Municipal Policy

69. The violations described herein were not unauthorized deviations from SFSO policy. They were conducted by supervisory personnel, directed by a sergeant, and carried out pursuant to longstanding customs and practices of the SFSO. Sergeant Ibarra's explicit instruction to Deputy Dockery not to deactivate her BWC during intimate searches, his subsequent statements minimizing

-15-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

and threatening women with recorded footage, and his direct retaliatory threats are direct evidence of supervisory authorization.

70. The SFSO has known of and failed to remedy cross-gender strip search practices for years, and Undersheriff Johnson has held senior executive positions at SFSO-including Chief Deputy and Assistant Sheriff-throughout the period during which those practices persisted. In *Pierce v. City and County of San Francisco*, No. 4:19-cv-07659-JSW (N.D. Cal.), plaintiffs alleged that male deputies observed female detainees during body cavity searches at SFCJ No. 2 on at least two occasions in 2018. The Court in Pierce found that the viewing was not sufficiently intentional under the specific evidence before it. The evidence in this case is qualitatively different and categorically stronger. Here: male deputies were deliberately positioned as partitions with sightlines into the search area; a supervisor explicitly refused to deactivate cameras recording women's naked bodies; a supervisor made statements comparing the footage to publicly distributed television; and a supervisor threatened continued searches against women who complained. This is not a case of casual or accidental viewing. It is a case of deliberate, supervisory-authorized, systematically inflicted violation.

71. Under Sheriff Miyamoto's authority and, on information and belief, pursuant to policies designed and implemented by Undersheriff Johnson, SFSO has maintained, ratified, or failed to correct the following policies and practices: (a) suspicionless mass strip searches of women without individualized justification; (b) deliberate positioning of male deputies to observe women during strip searches; (c) activation or failure to deactivate BWCs during strip searches; (d) denial of menstrual hygiene products following compelled removal of those products; (e) retaliation against detainees who file grievances or organize rights advocacy; (f) strip searches following supervised movement without individualized suspicion; and (g) failure to prevent deputies from engaging in sexualized observation and harassment of women in custody. Each reflects an official policy or longstanding custom with final policymaker ratification, or a failure to train amounting to deliberate indifference.

## CLASS ACTION ALLEGATIONS

72. Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated

-16-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

under Federal Rule of Civil Procedure 23(a) and (b)(3), and for purposes of injunctive and declaratory relief under Rule 23(b)(2). Plaintiffs additionally seek certification of common liability issues under Rule 23(c)(4), as described herein. The proposed class and subclasses are organized around the core constitutional violations established by the May 22, 2025 operation, supplemented by a post-movement search subclass reflecting a continuing and documented practice. The severe post-May 22 violations experienced by named plaintiffs-including penetrating searches, denial of medical privacy during childbirth, and First Amendment retaliation-are pleaded as evidence of SFSO's pattern and practice for purposes of class-wide liability and Monell liability, and support the relief sought on behalf of the entire class. These violations were not random or individual: they were institutionalized, supervisory-authorized, policy-driven, repeatable, and part of a broader culture and operational structure within SFSO custody operations that is susceptible to generalized proof through centralized institutional evidence.

A. Class Definition

73. The proposed Class ("the Class") consists of: All women who were detained in B Pod or any women's housing unit at San Francisco County Jail Number 2 on May 22, 2025, and who were present in the pod during the mass strip search operation conducted that day. The Class is anchored to May 22, 2025 because that operation is the clearest, most thoroughly documented instance of the challenged policies in action. The Class is ascertainable from Defendants' housing rosters, movement logs, and incident reports for that date.

B. Subclass Definitions and Class Representatives

74. Subclass One - The Searched Subclass. This subclass consists of all women in the Class who were directly required to remove their clothing and submit to a strip and visual body cavity search during the May 22, 2025 operation, including being ordered to lift their breasts, spread their buttocks, squat, and cough, in the presence of male deputies who were deliberately positioned to observe the searches and while SFSO deputies' body-worn cameras were activated and recording. The Searched Subclass unifies what were pleaded as separate cross-gender observation and BWC recording subclasses in the original draft because those injuries are not separable from the search itself: the deliberate male observation and the deliberate recording were integral features of how the

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

search was conducted, not incidental events that can be adjudicated independently. Proposed class representatives: MARILYN SAHAGUN LOPEZ, whose statement that male deputies were used as partitions specifically so they could see into the search area is the factual anchor for the cross-gender observation theory; GIOVANNA RAMIREZ-HERNANDEZ, who was searched by Deputy Dockery, heard Sergeant Ibarra refuse to permit camera deactivation, and personally observed that Dockery's camera was on throughout the search; and DAMENA PAGE, who specifically asked deputies to deactivate their cameras, was refused, and was told the recording was "not going to be used for people to view it"-a direct statement of awareness and deliberate choice.

75. Subclass Two - The Present But Not Searched Subclass. This subclass consists of all women in the Class who were present in B Pod on May 22, 2025 and were ordered into the common area and held there under armed supervision while other women were strip searched, but who were not themselves selected for a search that day. These women were compelled to witness, under armed guard, the forced nudity and intimate exposure of other women in their housing unit. They were not told whether or how they would be selected, they reasonably feared imminent selection, and they were subjected to a coercive atmosphere of control, humiliation, and surveillance. Their constitutional injuries-invasion of privacy, substantive due process violation, and Bane Act coercion-are real and cognizable even absent physical touching. Proposed class representative: ALEXCIS HERRERA, who was present in the pod during the May 22 operation, was not searched, witnessed the searches of others, heard Sergeant Ibarra refuse to permit camera deactivation, and the following day challenged Ibarra about the recordings.

76. Subclass Three - The Menstrual Hygiene Subclass. This subclass consists of all women in the Class who were menstruating on May 22, 2025 and were required to remove their menstrual hygiene products as part of the strip search and were not promptly provided with replacement products, resulting in denial of basic medical sanitation, compelled management of intimate hygiene needs while naked and under observation, and in some cases bleeding through their clothing while awaiting supplies. This subclass rests on a distinct and gender-specific constitutional harm that is independent of but compounded by the search itself: Defendants' failure to restore basic sanitary conditions after forcing women to remove menstrual products was objectively unreasonable and

-18-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

imposed injury unique to women. Proposed class representatives: LASONYA WELLS, who was forced to remove her tampon and was not provided a replacement; and JAYLA GLASER, who was not provided a replacement pad, was told she would receive clean underwear and was not given any, and subsequently bled through her underwear while waiting for supplies.

77. Subclass Four - The Post-Movement Search Subclass. This subclass consists of all women detained at SFCJ No. 2 at any time from January 1, 2023 to the present who were subjected to a strip or visual body cavity search upon return from a court appearance, medical appointment inside or outside the facility, or supervised family visitation, without individualized reasonable suspicion that they were concealing contraband, and without any security event or observed behavior providing an articulable basis for the search, where the woman had been under continuous SFSO supervision and physical restraint throughout her movement. The class period for this subclass is not limited to the period surrounding May 22, 2025: the post-movement strip search practice predates that operation, as reflected in Plaintiff Montoya's account of being subjected to strip searches approximately every two months before May 22 and Plaintiff Gonzales's account of repeated strip searches before the pandemic. This subclass potentially encompasses a substantially larger number of women than the twenty named Plaintiffs, given the frequency with which women detained at SFCJ No. 2 are transported to court, medical appointments, and family visits, and the categorical, non-individualized nature of SFSO's post-movement search practice. Post-movement strip searches imposed as a categorical default rule-regardless of supervision level, regardless of individualized suspicion, and regardless of whether the woman had any unsupervised contact-are constitutionally unreasonable under *Bell v. Wolfish* and its progeny, and their predictable deterrent effect on women's access to medical care and family contact imposes a distinct and ongoing constitutional injury. Proposed class representatives: LISA GONZALES, who was subjected to repeated pre-pandemic strip searches following routine movement and was searched after her May 22 tort claim in what she believed was retaliation; SILVIA MONTOYA, who was subjected to a pat-down search by four male deputies in a hallway following a supervised visit with her grandchildren on October 15, 2025; and SARAH WALLS, who was strip searched on return from federal court in August 2025 with a BWC activated and without privacy.

-19-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

C. Additional Evidence of SFSO Pattern and Practice

78. The following facts, experienced by named plaintiffs, are pleaded as evidence of SFSO's class-wide pattern and practice of constitutional violations and as support for Monell liability. They demonstrate that the violations described herein were not isolated to May 22, 2025, but reflect a continuing and escalating institutional practice: (a) LISA GONZALES was subjected to a June 17, 2025 "orifice search," a penetrating internal examination conducted without warrant or probable cause, establishing that SFSO's suspicionless invasive search practices extended well beyond the May 22 operation; (b) LACARLA CARR was subjected in July 2025 to a search in which a deputy used a flashlight to illuminate the interior of her vagina without warrant, further confirming the institutionalized nature of invasive search practices; (c) TAYLOR ROSS was subjected to compelled observation by male deputies during pelvic examinations by medical professionals and breastfeeding while hospitalized, demonstrating SFSO's policy of cross-gender observation extending beyond the jail facility itself; and (d) LASONYA WELLS, ALEXCIS HERRERA, MARILYN SAHAGUN LOPEZ, VICTORIA CHEW, DAMENA PAGE, ADRIANA GONZALEZ OCHOA, COURTNEY BOSSE, SILVIA MONTOYA, MELISSA PERNA, and GIOVANNA RAMIREZ-HERNANDEZ each suffered adverse actions following their filing of grievances, tort claims, or public advocacy regarding the May 22 operation, establishing a systematic, facility-wide pattern of retaliation against women who exercised their First Amendment rights. These facts are incorporated as class-wide evidence of SFSO's policies and customs. Plaintiffs further reserve the right to move for certification of additional subclasses following discovery if the evidence establishes sufficient numerosity and commonality.

D. Rule 23(a) Requirements

79. Numerosity: The Class and each Subclass are sufficiently numerous that joinder of all members is impracticable. SFCJ No. 2 is the only women's jail in San Francisco County. The May 22, 2025 operation affected the entire female population of B Pod. The Post-Movement Search Subclass encompasses an ongoing practice affecting all women at the facility who were transported to court appearances, medical appointments, or supervised family visits over a multi-year period - a category that encompasses potentially hundreds of women over the class period given the frequency

-20-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

of such movements and the volume of women cycling through the facility. The twenty named Plaintiffs are among an unknown but potentially substantially larger number of women subjected to SFSO's strip search policies and customs before, on, and after May 22, 2025. Strip searches were conducted at SFCJ No. 2 with regularity both before and after May 22, and the post-movement search practice described herein was applied as a categorical default to all women returning from outside movement regardless of their supervision status. Plaintiff Silvia Montoya, for example, was subjected to strip searches approximately every two months before May 22, 2025, and Plaintiff Lisa Gonzales was subjected to repeated strip searches before the pandemic. These allegations reflect an institutional practice of sufficient frequency and breadth that the class likely encompasses far more than the twenty women who have stepped forward as named Plaintiffs at this stage of the litigation. Precise numbers are ascertainable through Defendants' housing rosters, booking records, movement logs, search logs, BWC activation metadata, and incident reports.

80. Commonality: Common questions of law and fact predominate for each subclass. For the Searched Subclass: whether the May 22 operation was conducted without individualized suspicion; whether male deputies were deliberately positioned to observe naked women; whether BWC activation during strip searches violated the Fourth Amendment; whether supervisory authorization rendered the conduct a municipal policy. For the Present But Not Searched Subclass: whether compelled observation of others' strip searches under armed guard violated substantive due process and the Bane Act. For the Menstrual Hygiene Subclass: whether failure to provide replacement products after compelled removal constituted an objectively unreasonable condition. For the Post-Movement Search Subclass: whether categorical post-movement strip searches without individualized suspicion are constitutionally unreasonable.

81. Typicality: The proposed class representatives' claims are typical of the claims of their respective subclasses. Each representative was subjected to the same core practice, at the same facility, by the same agency, pursuant to the same policies and customs, and suffered the same types of constitutional injury as the subclass members they seek to represent.

82. Adequacy: The proposed class representatives will fairly and adequately protect the interests of their respective subclasses. They have no interests antagonistic to those subclasses, and Plaintiffs

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

have retained counsel experienced in federal civil rights litigation and complex class actions.

E. Rule 23(b) Requirements

83. Rule 23(b)(3): For all subclasses, common questions of law and fact predominate over individual questions, and a class action is superior to other available methods. Class members who are or were incarcerated face substantial barriers to individual suit, including fear of retaliation, limited legal resources, and the difficulty of preserving evidence within a custodial setting. Liability for all subclasses turns on common proof regarding SFSO's policies, practices, and supervisory decisions. Critically, the central liability questions-whether SFSO maintained policies or customs authorizing suspicionless strip searches, whether BWC activation during those searches was supervisory policy, whether cross-gender observation was deliberate institutional practice, and whether the retaliation that followed complaints was coordinated and systemic-are each susceptible to common, generalized proof through centralized institutional evidence, including body-worn camera activation metadata, jail movement logs, housing rosters, shift assignments, search logs, PREA complaints, grievance records, segregation records, policy manuals, training materials, supervisory communications, disciplinary files, surveillance footage, and jail-wide practices. These categories of evidence are by definition common to the class and are not dependent on individualized inquiry. Even if damages ultimately require some individualized proceedings, that prospect does not defeat predominance where, as here, the core liability determination is driven entirely by common institutional proof.

84. Rule 23(b)(2): For all subclasses, Defendants have acted or refused to act on grounds generally applicable to the subclass as a whole, making final injunctive and declaratory relief appropriate on a classwide basis. The relief sought-prohibition of suspicionless mass searches, prohibition of cross-gender observation and BWC recording during searches, provision of menstrual hygiene following compelled removal of products, and prohibition of post-movement searches without individualized suspicion-would provide uniform relief applicable to all subclass members. Because Defendants' liability-generating conduct operates through institutional policy and custom, injunctive relief targeting those policies would redress the constitutional injuries of all class members without individualized inquiry. Rule 23(b)(2) certification is particularly appropriate here

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-22-

because the primary relief sought is systemic: reform of SFSO's institutional policies governing strip searches, body-worn camera use during intimate searches, cross-gender observation, menstrual hygiene provision, and retaliation. These policies affect all women in SFSO custody in the same way, and declaratory and injunctive relief directed at those policies would benefit the class as a whole.

F. Rule 23(c)(4) Issues Class Certification

85. In the alternative, and in addition to certification of the Class and Subclasses under Rule 23(b)(2) and Rule 23(b)(3), Plaintiffs expressly seek certification of the following common liability issues pursuant to Federal Rule of Civil Procedure 23(c)(4). Certification of a common issues class is appropriate when resolution of particular issues-even if damages later require individualized proceedings-would materially advance the litigation as a whole. Where, as here, the resolution of common institutional policy questions would generate common answers apt to drive the resolution of the case, an issues class under Rule 23(c)(4) provides an efficient and constitutionally sound mechanism for adjudicating systemic institutional liability. The following questions are common to all class members and are susceptible to generalized proof through the centralized institutional evidence described herein, and their resolution in a single proceeding would significantly advance the just and efficient adjudication of this action: (a) whether SFSO maintained a policy or custom authorizing or permitting suspicionless mass strip searches of women detained at SFCJ No. 2 without individualized reasonable suspicion; (b) whether SFSO maintained a policy or custom permitting or directing the activation of body-worn cameras during strip or visual body cavity searches of women; (c) whether SFSO maintained a policy or custom permitting male deputies to be deliberately positioned within visual range of women undergoing strip or visual body cavity searches; (d) whether SFSO maintained a policy or custom authorizing post-movement strip searches of women following court appearances, medical appointments, or supervised family visitation absent individualized suspicion and absent any unsupervised contact during movement; and (e) whether SFSO maintained a policy or custom of retaliating against women detained at SFCJ No. 2 who filed grievances, organized other detainees to file claims, or engaged in public advocacy regarding the conditions of their confinement. Each of these questions is susceptible to common,

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-23-

class-wide proof through documentary evidence in SFSO's possession, including policy manuals, training materials, body-worn camera activation logs and metadata, jail movement logs, grievance records, segregation records, supervisory communications, and shift assignments. Certification of these common liability issues is appropriate even if damages ultimately require individualized proceedings as to each class member, because resolution of the common institutional questions will generate determinations that apply uniformly to every member of the Class and each Subclass and will materially advance the efficient adjudication of this action.

G. Bifurcation, Phased Certification, and Class Management

86. Plaintiffs expressly reserve the right to seek, following discovery and expert analysis, any of the following class management mechanisms as circumstances warrant: (a) phased certification, including a first phase limited to common liability questions and a second phase addressing individualized damages; (b) bifurcated proceedings with liability tried before the Class and damages determined in subsequent individualized or subclass proceedings; (c) liability-only class certification, with damages reserved for subsequent proceedings before the Court or a special master; (d) separate damages proceedings employing representative sampling or other aggregate proof methodologies approved by the Court; (e) refinement, division, addition, narrowing, or reconfiguration of subclasses based on evidence developed in discovery and the opinions of liability and damages experts; and (f) appointment of a special master or claims administrator to manage the damages phase if the Court determines that individualized proceedings are necessary following resolution of common liability issues. Plaintiffs submit that this action is well-suited to phased or bifurcated treatment because the institutional policy and custom questions that drive liability are entirely common to the class, while any individualized damages inquiry, if required, is secondary to and entirely dependent upon the threshold determination of whether SFSO's institutional policies were constitutionally deficient. Plaintiffs respectfully request that the Court evaluate the certification structure with these class management tools in view, and invite the Court to exercise its broad discretion under Rule 23(d) and (c)(1)(E) to issue any orders necessary to effectuate the fair and efficient resolution of this action.

## CLAIMS FOR RELIEF

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-24-

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

## FIRST CAUSE OF ACTION 42 U.S.C. Section 1983 - Fourth Amendment

## Unreasonable Strip Search And Visual Body Cavity Search

## (Against All Defendants, Including Undersheriff Johnson in Her Individual and Official Capacities)

87. Plaintiffs re-allege and incorporate by reference all preceding allegations.

88. The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects all persons, including pretrial detainees, from unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Florence v. Board of Chosen Freeholders*, 566 U.S. 318 (2012). A strip search or visual body cavity search is unreasonable under the Fourth Amendment when it is suspicionless, conducted without a legitimate penological justification, or conducted in a manner that is unnecessarily degrading or humiliating. The Ninth Circuit has recognized that cross-gender strip searches in which male officials intentionally observe female detainees' naked bodies are constitutionally unreasonable. See *Byrd v. Maricopa County Sheriff's Department*, 629 F.3d 1135 (9th Cir. 2011).

89. The searches described herein were suspicionless, mass, random, and unjustified by any individualized determination of security need. The May 22, 2025 operation searched an entire housing pod without any basis for suspecting any individual woman of concealing contraband. The post-movement searches were conducted regardless of the degree of continuous supervision maintained during movement. The invasive penetrating examinations described by plaintiffs Gonzales and Carr required, at minimum, individualized probable cause and, in most circumstances, a warrant.

90. The cross-gender nature of the searches rendered them additionally unreasonable. In contrast to cases where courts have found male viewing of female searches to be incidental or casual, the evidence here establishes intentional deliberateness: male deputies were used as partitions specifically positioned to observe naked women; a supervisor explicitly refused to permit camera deactivation; and a supervisor acknowledged on multiple occasions that women's naked bodies were being recorded. The viewing in this case was not incidental. It was structural. Defendants cannot claim the defense available in cases of casual or accidental observation.

**THE VEEN FIRM LLP**
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-25-

91. The activation of body-worn cameras during strip searches, over the express objection of detainees and pursuant to the explicit instruction of a supervisory sergeant, constituted an additional Fourth Amendment violation. The permanent digital capture of women's naked bodies during intimate searches serves no legitimate security interest and constitutes an unreasonable seizure of intimate images.

92. All Defendants acted under color of state law. Their conduct deprived Plaintiffs and class members of rights secured by the Fourth and Fourteenth Amendments. Plaintiffs are entitled to compensatory and punitive damages, declaratory relief, and injunctive relief.

**SECOND CAUSE OF ACTION 42 U.S.C. Section 1983 - Fourteenth Amendment**

**Substantive Due Process / Bodily Integrity**

**(Against All Defendants, Including Undersheriff Johnson in Her Individual and Official**

**Capacities)**

93. Plaintiffs re-allege and incorporate by reference all preceding allegations.

94. The Fourteenth Amendment prohibits government conduct that shocks the conscience and violates the bodily integrity of persons in state custody. *Rochin v. California*, 342 U.S. 165 (1952). Pretrial detainees are protected from punishment and from government conduct that would not be rationally related to a legitimate governmental objective. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

95. Defendants' conduct - including mass suspicionless strip searches, intentional cross-gender observation, unauthorized digital recording of naked women, denial of menstrual hygiene, penetrating examinations without a warrant, and deliberate use of searches as weapons of punishment and retaliation - shocks the conscience and violates Plaintiffs' substantive due process right to bodily integrity.

96. Sergeant Ibarra's explicit refusal to permit deactivation of BWCs during intimate searches, his statements comparing footage to entertainment television while women were standing naked under guard, his threats conditioning future searches on women's silence, and the systematic retaliation against women who sought redress collectively establish that Defendants acted intentionally and with conscious disregard of the unconstitutionality of their conduct.

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-26-

**THIRD CAUSE OF ACTION 42 U.S.C. Section 1983 - Fourteenth Amendment**

**Equal Protection Clause - Sex Discrimination**

**(Against All Defendants, Including Undersheriff Johnson in Her Individual and Official Capacities)**

97. Plaintiffs re-allege and incorporate by reference all preceding allegations.

98. The Equal Protection Clause prohibits intentional discrimination on the basis of sex. Strip searches deliberately arranged to expose women's bodies to male official observation, and the denial of basic menstrual hygiene following compelled removal of menstrual products, constitute intentional sex-based discrimination. The deliberate positioning of male deputies as observational partitions during women's intimate searches is gender-based humiliation with no counterpart in the treatment of male detainees. These practices were imposed on women because they are women and would not have been imposed on male detainees in any remotely analogous form.

**FOURTH CAUSE OF ACTION 42 U.S.C. Section 1983 - Eighth Amendment**

**Cruel and Unusual Punishment (Alternative)**

**(Against All Defendants; Applicable to Convicted Plaintiffs)**

99. Plaintiffs re-allege and incorporate by reference all preceding allegations.

100. To the extent any Plaintiff was a convicted prisoner at the time of the searches, the Eighth Amendment's prohibition on cruel and unusual punishment applies. The Eighth Amendment prohibits the wanton and unnecessary infliction of pain or suffering. *Farmer v. Brennan*, 511 U.S. 825 (1994). The conduct described herein - including mass suspicionless searches conducted to humiliate, intentional cross-gender observation, unauthorized recording, denial of menstrual hygiene, and penetrating examinations without cause - violates the Eighth Amendment as applied to any Plaintiff held in convicted status.

**FIFTH CAUSE OF ACTION 42 U.S.C. Section 1983 - First Amendment**

**Retaliation for Protected Activity**

**(Against All Defendants, Including Undersheriff Johnson in Her Individual and Official Capacities)**

101. Plaintiffs re-allege and incorporate by reference all preceding allegations.

-27-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

102. The First Amendment protects the right of incarcerated persons to file grievances, access courts, and petition for redress. *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005). A government official violates the First Amendment when adverse action is taken against an inmate because of the inmate's exercise of a protected right, and the adverse action would chill or deter a person of ordinary firmness.

103. The retaliation described herein was systematic, coordinated, and directed at an identifiable class of women who exercised their First Amendment rights. Defendants' retaliatory conduct was uniform in nature-targeting women who filed grievances, organized tort claims, or engaged in public advocacy regarding the May 22 operation-and reflects a facility-wide policy and practice of suppressing protected speech through adverse action. The named plaintiffs' experiences are representative of the class-wide pattern of retaliation and are asserted both as direct class claims and as evidence of SFSO's municipal custom and policy for purposes of Monell liability. Plaintiffs further reserve the right to move for certification of a dedicated retaliation subclass following discovery.

104. Defendants engaged in the following retaliatory acts: (a) placing plaintiff LaSonya Wells in segregation within one week of her organization of tort claim filings; (b) placing plaintiff Alexcis Herrera in segregation within one week of the same activity; (c) removing plaintiff Marilyn Sahagun Lopez from her work assignment after she complained; (d) placing plaintiff Victoria Chew in segregation after she filed a grievance; (e) placing plaintiff Damena Page in segregation after she filed a tort claim; (f) removing plaintiffs Ochoa, Montoya, Sahagun Lopez, and Ramirez-Hernandez from kitchen work assignments following the public press conference; and (g) subjecting plaintiffs Ochoa and Perna to approximately four additional targeted strip searches after they filed a grievance.

105. Sergeant Ibarra's direct threat in November 2025 - that strip searches would continue unless women stopped "disrespecting deputies" - conditioned the cessation of unconstitutional practices on the silencing of protected speech. This constitutes both retaliation and coercive chilling of First Amendment-protected activity.

**SIXTH CAUSE OF ACTION 42 U.S.C. Section 1983 - Monell and Supervisory Liability**

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-28-

**(Against CCSF, SFSO, Sheriff Miyamoto, and Sergeant Ibarra)**

106. Plaintiffs re-allege and incorporate by reference all preceding allegations.

107. Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality is liable under section 1983 when a constitutional violation results from an official policy, an unofficial custom or practice, a final policymaker's ratification, or a failure to train or supervise amounting to deliberate indifference.

108. Official Policy: SFSO maintained official policies governing strip search procedures, body-worn camera use, and detainee movement at SFCJ No. 2. Those policies, as applied by Sergeant Ibarra and other personnel, authorized or failed to prevent the suspicionless mass searches, cross-gender observation, and BWC recording described herein. Sheriff Miyamoto, as the elected final policymaker, and Undersheriff Johnson, as the operational policymaker for custody, are each responsible for those policies. Plaintiffs are informed and believe and thereon allege that Undersheriff Johnson was the originating architect of the strip search practices challenged herein, and that those practices were implemented pursuant to her direction and authority.

109. Longstanding Custom and Practice: SFSO has maintained a longstanding practice of subjecting women at SFCJ No. 2 to suspicionless strip searches and cross-gender observation. *Pierce v. CCSF*, No. 4:19-cv-07659-JSW (N.D. Cal. 2021) documented nearly identical cross-gender body cavity searches at SFCJ No. 2 in 2018. The continuation and escalation of those practices in 2025 - now with the addition of deliberate BWC recording - demonstrates an entrenched institutional custom, not an isolated deviation.

110. Final Policymaker Ratification: Sheriff Miyamoto ratified the constitutional violations described herein by maintaining the policies and practices that caused them, failing to discipline or retrain personnel, and continuing to permit mass suspicionless searches, cross-gender observation, BWC recording during searches, and retaliation against complainants. Undersheriff Johnson independently ratified the constitutional violations as the operational policymaker for custody: Plaintiffs are informed and believe and thereon allege that Johnson designed or approved the strip search practices at issue, that she was aware of the manner in which those practices were implemented at SFCJ No. 2, and that she took no corrective action. Johnson's ratification as a

-29-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

functional final policymaker for custody operations is an independent basis for municipal liability under Monell.

111. Deliberate Indifference to Training and Supervision: SFSO's persistent failure to train deputies on the constitutional requirements governing strip searches - including the prohibition on cross-gender observation, the prohibition on recording during intimate searches, the requirement of individualized suspicion, and the prohibition on retaliation - constitutes deliberate indifference. The prior litigation in Pierce, the ongoing formal complaints by detainees, and the predictability that mass searches of women would be conducted in the presence of male deputies and with cameras activated establish that SFSO was on notice of the risk of constitutional violations and chose to do nothing.

112. Supervisory Liability - Sergeant Ibarra: Sergeant Ibarra personally directed the conduct causing Plaintiffs' injuries, explicitly instructed Deputy Dockery not to deactivate her BWC, made threatening statements about future searches, and ordered or ratified retaliatory segregation of complainants. He is individually liable as a supervisor under section 1983.

113. Supervisory Liability - Undersheriff Johnson: Undersheriff Johnson is individually liable as a supervisory defendant under section 1983. A supervisor is liable when she sets in motion a series of acts by others that she knew or reasonably should have known would cause others to inflict constitutional injury, or when she knew of the violations and failed to act to prevent them. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). Plaintiffs are informed and believe and thereon allege that Johnson, as the operational architect of the custody strip search policies, set in motion the acts that caused Plaintiffs' injuries. She knew or reasonably should have known that mass suspicionless searches of women conducted with male deputies in observation positions and with body-worn cameras activated would violate the constitutional rights of women detainees. Her failure to prohibit cross-gender observation, prohibit BWC recording during searches, require individualized suspicion, and implement basic post-search menstrual hygiene protocols reflects a deliberate choice to maintain policies she knew to be constitutionally deficient. Johnson is sued in her individual capacity for supervisory liability and in her official capacity for purposes of Monell and declaratory and injunctive relief.

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-30-

**SEVENTH CAUSE OF ACTION California Constitution, Article I, Section 1**

**Right to Privacy**

**(Against All Defendants, Including Undersheriff Johnson in Her Individual and Official Capacities)**

114. Plaintiffs re-allege and incorporate by reference all preceding allegations.

115. Article I, Section 1 of the California Constitution guarantees every person an inalienable right of privacy. This right applies to persons in custodial settings and encompasses the right to bodily privacy and freedom from government observation of one's naked body without justification.

116. Defendants' mass suspicionless strip searches, deliberate cross-gender observation, and activation of body-worn cameras to capture images of naked women during intimate searches violate the California constitutional right to privacy. Plaintiffs are entitled to damages and injunctive relief.

**EIGHTH CAUSE OF ACTION California Constitution, Article I, Section 13**

**Unreasonable Search and Seizure**

**(Against All Defendants, Including Undersheriff Johnson in Her Individual and Official Capacities)**

117. Plaintiffs re-allege and incorporate by reference all preceding allegations.

118. Article I, Section 13 of the California Constitution independently prohibits unreasonable searches and seizures, providing protections at least co-extensive with the Fourth Amendment. For the reasons stated in the First Cause of Action and throughout this Complaint, Defendants' strip search practices, cross-gender observation, and BWC recording during intimate searches violated the California Constitution. Plaintiffs are entitled to damages and injunctive relief.

**NINTH CAUSE OF ACTION California Civil Code Section 52.1 (The Bane Act)**

**Interference with Constitutional Rights by Threat, Intimidation, or Coercion**

**(Against All Defendants, Including Undersheriff Johnson in Her Individual and Official Capacities)**

119. Plaintiffs re-allege and incorporate by reference all preceding allegations.

120. The Bane Act, California Civil Code section 52.1, prohibits interference by threats, intimidation, or coercion with the exercise or enjoyment by any individual of rights secured by the

-31-

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Constitution or laws of the United States or California. It provides for compensatory and punitive damages, injunctive relief, and attorneys' fees.

121. Defendants interfered with Plaintiffs' constitutional rights through specific acts of threat, intimidation, and coercion, including: (1) compelling women to strip naked under armed guard while male deputies deliberately watched; (2) activating BWCs during searches and threatening women with permanent digital capture of their naked bodies; (3) making statements that footage would be publicly distributed unless genitalia were "blurred"; (4) retaliating against women who filed grievances by placing them in segregation, removing work assignments, and subjecting them to targeted searches; (5) threatening continued strip searches unless women ceased complaints; and (6) entering a laboring woman's hospital room and refusing to leave during pelvic examinations and breastfeeding.

122. The Bane Act's specific intent requirement is satisfied. Sergeant Ibarra's explicit refusal to permit BWC deactivation, his retaliatory threats, and the systematic placement of male deputies as observational partitions all establish that Defendants intended to violate Plaintiffs' constitutional rights. *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004).

**TENTH CAUSE OF ACTION California Civil Code Section 52.4 (Gender Violence)**

**(Against Individual Defendants and Does)**

123. Plaintiffs re-allege and incorporate by reference all preceding allegations.

124. California Civil Code section 52.4 provides a civil cause of action for "gender violence," defined to include a physical intrusion or invasion of a sexual nature under coercive conditions. It authorizes compensatory and punitive damages, injunctive relief, and attorneys' fees.

125. Defendants' conduct constitutes gender violence. The compelled exposure of women's genitalia and intimate body parts to male deputies, the penetrating searches described by plaintiffs Gonzales and Carr, the groping of plaintiff Lopez's breast by Deputy Mustos, and the systematic sexual humiliation of women during the May 22, 2025 operation constitute physical intrusions or invasions of a sexual nature under coercive conditions. The gender-specific nature of the harm - imposed on women specifically because of their gender, through compelled nudity and genital exposure before male authority figures - establishes the gender nexus required by section 52.4.

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-32-

## **ELEVENTH CAUSE OF ACTION Battery**

### **(Against Deputy Mustos, Deputy Dockery, Deputy Ng, and Does)**

126. Plaintiffs re-allege and incorporate by reference all preceding allegations.

127. Battery is the harmful or offensive touching of another person without consent. The warrantless, suspicionless intimate body searches described herein - including the groping of plaintiff Lopez's breast by Deputy Mustos and the penetrating examinations described by plaintiffs Gonzales and Carr - constituted harmful and offensive touching without lawful justification or meaningful consent. The touching was carried out under color of official authority and coercive conditions that precluded any genuine voluntary consent. Plaintiffs are entitled to compensatory and punitive damages.

## **TWELFTH CAUSE OF ACTION Intentional Infliction of Emotional Distress**

### **(Against All Defendants, Including Undersheriff Johnson in Her Individual and Official Capacities)**

128. Plaintiffs re-allege and incorporate by reference all preceding allegations.

129. Intentional infliction of emotional distress requires extreme and outrageous conduct, intentional or reckless disregard of the probability of causing severe emotional distress, and actual severe emotional distress. *Hughes v. Pair*, 46 Cal.4th 1035 (2009).

130. Defendants' conduct was extreme and outrageous beyond all reasonable bounds of decency. Compelling women to strip naked under armed guard while male deputies watched; recording those women with BWCs without consent; threatening to publicly distribute footage of their naked bodies; denying menstrual hygiene to menstruating women after forcing removal of sanitary products; subjecting women to digital penetration during searches; groping a detainee's breast after her strip search; retaliating against women who sought redress; and entering a woman's hospital room during childbirth and breastfeeding while refusing to leave - these acts collectively shock the conscience and exceed any recognized standard of lawful government conduct.

131. Plaintiff Jazmin Mendez continues to experience nightmares related to the searches and is currently on medication for trauma-related symptoms. Plaintiff Taylor Ross was subjected to compelled observation during pelvic exams by medical professionals and while breastfeeding. All

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-33-

named Plaintiffs suffered and continue to suffer severe emotional distress. Plaintiffs are entitled to compensatory and punitive damages.

## DAMAGES

132. As a direct and proximate result of each Defendant's acts and omissions, Plaintiffs and all other similarly situated persons have sustained and continue to sustain the following injuries and damages, past and future:

 a. Compensatory damages for all constitutional and statutory violations;

 b. Emotional distress, trauma, nightmares, anxiety, fear, humiliation, indignity, and invasion of bodily integrity and privacy;

 c. Physical injuries, including urinary tract infection, unsanitary conditions from denial of menstrual hygiene, and bodily harm from unlawful penetrating searches;

 d. Loss of work assignments and associated privileges as a result of retaliation;

 e. Harm from unlawful placement in administrative segregation in retaliation for protected activity;

 f. Loss of enjoyment of life and other continued pain and suffering;

 g. All damages and penalties recoverable under 42 U.S.C. sections 1983 and 1988, California Civil Code sections 52, 52.1, and 52.4, California Code of Civil Procedure section 1021.5, and as otherwise allowed by California and federal law.

## PUNITIVE DAMAGES

133. The individual defendants - Sergeant Ibarra, Deputy Dockery, Deputy Ng, Deputy Mustos, and the Doe defendants - acted with oppression, fraud, malice, or reckless disregard of Plaintiffs' constitutional and civil rights. Sergeant Ibarra's explicit refusal to permit deactivation of BWCs during strip searches, his retaliatory threats, his systematic use of segregation to silence complainants, and his direct statement conditioning future searches on women's silence reflect conscious disregard for the rights and dignity of incarcerated women that justifies punitive damages under federal and California law. Deputy Mustos's groping of plaintiff Lopez's breast while making degrading sexual comments constitutes malice and oppression. Plaintiffs are entitled to punitive damages against all individual defendants.

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

**THE VEEN FIRM LLP**
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the proposed Class and Subclasses respectfully request:

a. Certification of the proposed Class and Subclasses under Federal Rule of Civil Procedure 23, specifically: (i) the Searched Subclass with class representatives Marilyn Sahagun Lopez, Giovanna Ramirez-Hernandez, and Damena Page; (ii) the Present But Not Searched Subclass with class representative Alexcis Herrera; (iii) the Menstrual Hygiene Subclass with class representatives LaSonya Wells and Jayla Glaser; and (iv) the Post-Movement Search Subclass with class representatives Lisa Gonzales, Silvia Montoya, and Sarah Walls;

b. Compensatory damages in an amount according to proof, to be determined at trial;

c. Punitive damages against individual defendants in an amount sufficient to punish and deter;

d. Declaratory relief establishing that Defendants' policies and practices - including those designed, directed, and ratified by Undersheriff Katherine Johnson in her role as operational policymaker for SFSO custody - of suspicionless mass strip searches of women, deliberate cross-gender observation during searches, activation of BWCs during intimate searches, denial of menstrual hygiene following compelled removal of products, retaliation against women who file grievances, and categorical post-movement strip searches without individualized suspicion, are unlawful under the United States and California Constitutions and applicable statutes;

e. Preliminary and permanent injunctive relief: (i) prohibiting suspicionless mass strip searches absent a facility-wide emergency with documented individualized justification; (ii) prohibiting the activation or use of body-worn cameras during any strip or visual body cavity search; (iii) prohibiting the presence of male deputies within visual range of women during strip searches or visual body cavity searches; (iv) requiring prompt provision of replacement menstrual hygiene products following compelled removal of such products; (v) prohibiting pat-down or strip searches of women by male deputies absent a documented emergency authorization; (vi) prohibiting retaliation against

CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

detainees who file grievances or organize rights advocacy; and (vii) requiring periodic monitoring, compliance reporting, and Court oversight;

f.  Attorneys' fees and costs under 42 U.S.C. section 1988, California Civil Code sections 52(b)(3) and 52.1(h), California Code of Civil Procedure section 1021.5, and other applicable law;

g.  Pre-judgment and post-judgment interest as provided by law;

h.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: May 22, 2026

By:

/s/
Elizabeth Bertolino, SBN 331674
BERTOLINO LAW, PC
Attorneys for Plaintiffs and the Proposed Class

/s/
Anthony Label, SBN 205920
Molly Ryan, SBN 339390
THE VEEN FIRM, LLP
Attorneys for Plaintiffs and the Proposed Class

/s/
Michael Christian, SBN 212716
THE LAW OFFICE OF MICHAEL CHRISTIAN
Attorneys for Plaintiffs and the Proposed Class

THE VEEN FIRM LLP
20 HAIGHT STREET
SAN FRANCISCO, CA 94102
Tel: (415) 673-4800
www.veenfirm.com

-36-
CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL